1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHARLES G. REECE,                          No.  2:10-cv-2949 JAM DAD P

12              Plaintiff,

13      v.                                      FINDINGS AND RECOMMENDATIONS

14   ALVARO TRAQUINA,

15              Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under

18   42 U.S.C. § 1983.  This matter is before the court on a motion for summary judgment brought

19   pursuant to Rule 56 of the Federal Rules of Civil Procedure on behalf of defendant Dr. Traquina.

20   Plaintiff has filed an opposition to the motion, and defendant has filed a reply.  For the reasons

21   discussed below, the court will recommend that defendant's motion for summary judgment be

22   granted.

23                                  **BACKGROUND**

24          Plaintiff is proceeding on an amended complaint.  Therein, he alleges that defendant Dr.

25   Traquina created, approved, and continued a policy of denying plaintiff and other inmates

26   suffering from hypertension the blood pressure checks their doctors had ordered during prison

27   lock-down periods from May 2010 through November 2011 in violation of the Eighth

28   /////

                                            1

Amendment.  In terms of relief, plaintiff requests damages and injunctive relief.  (Am. Compl. at 5 & Attach. & Exs.)

**PROCEDURAL BACKGROUND**

Plaintiff commenced this action in November 2010.  The court screened plaintiff's complaint and determined that service was appropriate with respect to defendant Dr. Traquina.  (Doc. No. 7)  On June 24, 2011, defendant Dr. Traquina filed a motion to dismiss the complaint for failure to state a cognizable claim for relief.  (Doc. No. 13)  On January 20, 2012, the undersigned issued findings and recommendations, recommending that defendant's motion to dismiss be granted.  (Doc. No. 22)  On March 29, 2012, the assigned district judge adopted the findings and recommendations in full and entered judgment on the same day.  (Doc. Nos. 25 & 26)

Plaintiff appealed, and the U.S. Court of Appeals for the Ninth Circuit affirmed in part, vacated in part, and remanded the case back to this court.  (Doc. No. 31)  The Ninth Circuit found that it was not "absolutely clear" that plaintiff could not cure deficiencies of his claim that defendant Dr. Traquina was responsible for an institutional policy or practice of failing to provide blood pressure screenings to inmates when the prison was on lockdown.  (Id.)

On remand, this court granted plaintiff leave to file an amended complaint only with respect to his claim that defendant Dr. Traquina was responsible for an institutional policy of failing to provide blood pressure screening to inmates when the prison was on lockdown.  (Doc. No. 34)  Thereafter, plaintiff filed his amended complaint, and defendant filed an answer.  (Doc. Nos. 35 & 37)  On April 30, 2013, the court issued a discovery and scheduling order, and on October 18, 2013, defendant Dr. Traquina filed the pending motion for summary judgment.  (Doc. Nos. 38 & 41)

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

1      Under summary judgment practice, the moving party "initially bears the burden of

2 proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation,

3 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

4 The moving party may accomplish this by "citing to particular parts of materials in the record,

5 including depositions, documents, electronically store information, affidavits or declarations,

6 stipulations (including those made for purposes of the motion only), admission, interrogatory

7 answers, or other materials" or by showing that such materials "do not establish the absence or

8 presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

9 support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

10 of proof at trial, "the moving party need only prove that there is an absence of evidence to support

11 the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).

12 See also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

13 adequate time for discovery and upon motion, against a party who fails to make a showing

14 sufficient to establish the existence of an element essential to that party's case, and on which that

15 party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure

16 of proof concerning an essential element of the nonmoving party's case necessarily renders all

17 other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

18 long as whatever is before the district court demonstrates that the standard for entry of summary

19 judgment, . . ., is satisfied."  Id. at 323.

20      If the moving party meets its initial responsibility, the burden then shifts to the opposing

21 party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

22 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

23 existence of this factual dispute, the opposing party may not rely upon the allegations or denials

24 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

25 admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

26 Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

27 fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

28 governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

1  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

2  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

3  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

4        In the endeavor to establish the existence of a factual dispute, the opposing party need not

5  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

8  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

9  Matsushita, 475 U.S. at 587 (citations omitted).

10        "In evaluating the evidence to determine whether there is a genuine issue of fact," the

11  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

12  party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

13  the opposing party's obligation to produce a factual predicate from which the inference may be

14  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

15  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

16  party "must do more than simply show that there is some metaphysical doubt as to the material

17  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

18  nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

19  omitted).

20      **OTHER APPLICABLE LEGAL STANDARDS**

21  I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

22        The Civil Rights Act under which this action was filed provides as follows:

23      Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the
24  deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
25  law, suit in equity, or other proper proceeding for redress.

26  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

27  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

28  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

4

1   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

2   meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

3   omits to perform an act which he is legally required to do that causes the deprivation of which

4   complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

5       Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

6   their employees under a theory of respondeat superior and, therefore, when a named defendant

7   holds a supervisorial position, the causal link between him and the claimed constitutional

8   violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

9   Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

10  concerning the involvement of official personnel in civil rights violations are not sufficient.  See

11  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

12  II.  The Eighth Amendment and Inadequate Medical Care

13      The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment

14  prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v.

15  Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  In order to

16  prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that

17  objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

18  acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

19  Seiter, 501 U.S. 294, 298-99 (1991).

20      If a prisoner's Eighth Amendment claim arises in the medical care context, the prisoner

21  must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference

22  to serious medical needs." Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has

23  two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's

24  response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on

25  other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

26      A medical need is serious "if the failure to treat the prisoner's condition could result in

27  further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974

28  F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include

1 "the presence of a medical condition that significantly affects an individual's daily activities." Id.

2 at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

3 objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S.

4 825, 834 (1994).

5       If a prisoner establishes the existence of a serious medical need, he must then show that

6 prison officials responded to the serious medical need with deliberate indifference.  See Farmer,

7 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny,

8 delay, or intentionally interfere with medical treatment, or may be shown by the way in which

9 prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th

10 Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard to

11 medical care, however, "the indifference to his medical needs must be substantial.  Mere

12 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

13 Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

14 105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

15 negligence in diagnosing or treating a medical condition, without more, does not violate a

16 prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate

17 indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

18 ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

19       Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S.

20 at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a

21 plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th

22 Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059;

23 Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198,

24 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

25 1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would

26 provide additional support for the inmate's claim that the defendant was deliberately indifferent to

27 his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

28 /////

6

1    Finally, mere differences of opinion between a prisoner and prison medical staff or

2    between medical professionals as to the proper course of treatment for a medical condition do not

3    give rise to a § 1983 claim.  See Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012); Toguchi,

4    391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891

5    F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

6                                            **ANALYSIS**

7    Counsel on behalf of defendant Dr. Traquina has moved for summary judgment on

8    plaintiff's inadequate medical care claim on the grounds that the evidence submitted establishes

9    that defendant Dr. Traquina was not deliberately indifferent to plaintiff's serious medical needs.

10   (Def.'s Mem. of P. & A. at 7-9.)  Based on all of the evidence presented in connection with the

11   pending motion for summary judgment, and for the reasons stated below, the undersigned

12   concludes that defendant Dr. Traquina is entitled to summary judgment in his favor with respect

13   to this claim.  See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (supervisory defendant may

14   be held liable under § 1983 only "'if there exists either (1) his or her personal involvement in the

15   constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful

16   conduct and the constitutional violation.'") (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir.

17   1989)).

18   First, the court finds that defendant Dr. Traquina has borne the initial responsibility of

19   coming forward with evidence demonstrating that no reasonable juror could conclude that he was

20   deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment.

21   Defendant Dr. Traquina has submitted a statement of undisputed facts supported by declarations

22   signed under penalty of perjury by defendant Dr. Traquina and Dr. Pfile.  Defendant's statement

23   of undisputed facts is also supported by citations to a transcript of plaintiff's deposition and to

24   plaintiff's medical records.  The evidence submitted by the defendant in support of his motion for

25   summary judgment establishes the following.

26   At all relevant times to this suit, plaintiff was an inmate at California State Prison, Solano

27   ("CSP-Solano"), and defendant Dr. Traquina was the Chief Medical Officer ("CMO") at CSP-

28   Solano.  At all relevant times, Dr. Ashley Pfile was plaintiff's primary care physician at CSP-

1    Solano.  (Def.'s SUDF 1-2 & 6, Pfile Decl., Pl.'s Dep.)

2           On March 5, 2010, Dr. Pfile saw plaintiff.  At that time plaintiff complained of episodes

3    of chest pressure, palpitations, and near syncope (fainting) beginning six weeks earlier.  Dr. Pfile

4    prepared a Physician Request for Services for plaintiff to receive a cardiology evaluation.  On

5    March 25, 2010, Dr. Dassah, a cardiologist, evaluated plaintiff.  Plaintiff's examination by Dr.

6    Dassah was unremarkable.  Plaintiff reported that his symptoms had ceased and had not returned.

7    Dr. Dassah recommended that plaintiff undergo a treadmill test at CSP-Solano.  Plaintiff

8    subsequently underwent an Exercise Tolerance Test ("ETT") or Stress Test on a treadmill at CSP-

9    Solano.  His results from that test were found to be within normal limits.  (Def.'s SUDF 8-9, Pfile

10   Decl.)

11          On May 10, 2010, plaintiff returned to CSP-Solano from an ophthalmology appointment

12   outside the institution.  He reported to the Triage and Treatment Area ("TTA") of CSP-Solano on

13   that date complaining of chest pains.  Dr. Rallos diagnosed plaintiff as suffering from

14   hypertension and prescribed him enalapril to control his blood pressure.  Dr. Rallos advised

15   plaintiff to monitor his blood pressure three times a week and to follow-up with his primary care

16   provider.  (Def.'s SUDF 4, Pfile Decl., Pl.'s Dep.)

17          Three days later, on May 13, 2010, plaintiff reported to the CSP-Solano annex clinic

18   complaining of dizziness and elevated blood pressure.  He was transported within the facility to

19   the TTA, where his prescription dosage of enalapril was increased and he was monitored until his

20   blood pressure readings returned to within normal limits.  Plaintiff was also given a prescription

21   for hydrochlorothiazide at that time to control his blood pressure.  (Def.'s SUDF 5, Pfile Decl.,

22   Pl.'s Dep.)

23          On May 20, 2010, Dr. Pfile saw plaintiff again.  She continued plaintiff's prescription for

24   hydrochlorothiazide as his primary treatment for his hypertension, discontinued the enalapril, and

25   advised plaintiff to monitor his blood pressure twice a week.  Plaintiff also received a card during

26   that visit on which to record his blood pressure readings.  (Def.'s SUDF 6-7, Pfile Decl., Pl.'s

27   Dep.)

28   /////

                                                      8

On July 2, 2010, plaintiff had a follow-up doctor visit for his hypertension.  He did not present with any complaints or symptoms at this appointment, and the monitoring of his blood pressure revealed that it was staying within normal limits.  On July 16, 2010, Dr. Pfile noted that plaintiff's hypertension was under excellent control with medication.  (Def.'s SUDF 10-11, Pfile Decl.)

On October 27, 2010, Dr. Pfile saw plaintiff for complaints of some dizziness, stomach cramping, and shoulder pain.  Plaintiff's blood pressure readings indicated that his hypertension was under excellent control with hydrochlorothiazide, and the rest of plaintiff's cardiac work-up results were within normal limits.  Plaintiff's prescription for hydrochlorothiazide was modified because that medication can be the cause of dizziness.  By November 29, 2010, plaintiff's dizziness had improved significantly with the reduction of the hydrochlororthiazide dosage.  At that time plaintiff's blood pressure readings indicated continued excellent control of his hypertension.  (Def.'s SUDF 12-13, Pfile Decl.)  As of February 25, 2011, plaintiff's blood pressure readings indicated continued excellent control of his hypertension with only minor modifications to his prescribed medication.

From March 26, 2011, until April 2, 2011, plaintiff was hospitalized at San Joaquin General Hospital for a syncopal episode attributed to his prescription eye drops and pneumonia.  That hospitalization was not attributable to plaintiff's hypertension.  (Def.'s SUDF 14-15, Pfile Decl., Pl.'s Dep.)

Plaintiff was seen at least monthly by doctors for follow-up appointments from April until November 2011, regarding all of his medical conditions, including his hypertension.  Plaintiff's blood pressure readings continued to indicate fair to excellent control of his hypertension with the prescribed medication.  (Def.'s SUDF 16, Pfile Decl., Pl.'s Dep.)

According to Dr. Pfile, plaintiff's hypertension was well controlled with medication as Dr. Pfile and other medical professionals regularly evaluated his hypertension condition during plaintiff's routine medical appointments.  There is no indication in plaintiff's medical records that he suffered any injury or experienced any complications due to a lack of blood pressure readings.  On November 22, 2011, plaintiff transferred from CSP-Solano to San Quentin State Prison.

1    (Def.'s SUDF 17-20, Pfile Decl., Pl.'s Dep.)

2         Plaintiff admitted during his deposition in this case that he does not know what dates he

3    was unable to monitor his blood pressure nor how many times he believes his blood pressure was

4    not taken when it supposedly should have been taken.  Plaintiff acknowledged that if he

5    experienced any light-headedness or dizziness that he associated with elevated blood pressure, he

6    could request to see someone in the TTA of CSP-Solano by going "man-down," even when his

7    housing unit was on modified program or lockdown or on holidays.  Plaintiff also conceded that

8    he never filled out a Request for Health Care Services to have his blood pressure checked during

9    any modified programming or lockdown when he was not able to freely walk to the annex clinic

10   to have his blood pressure checked.  Plaintiff also admitted that he never requested a ducat to go

11   to the annex clinic or for an escort to the annex clinic during any modified program or lockdown

12   when he was not able to freely walk to the annex clinic to have his blood pressure checked.

13   (Def.'s SUDF 20-24, Traquina Decl., Pl.'s Dep.)

14        According to defendant Dr. Traquina, there simply was no policy at CSP-Solano to

15   preclude, delay, or otherwise prevent inmates with a history of hypertension from having medical

16   professionals monitor their blood pressure.  Defendant Dr. Traquina declares that he has never

17   met or treated plaintiff.  (Def.'s SUDF 25-26, Traquina Decl., Pl.'s Dep.)

18        Given the evidence submitted by defendant Dr. Traquina in support of the pending motion

19   for summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue

20   of material fact with respect to his inadequate medical care claim.  On defendant's motion for

21   summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable

22   inferences from the evidence before the court in plaintiff's favor.  The court has reviewed

23   plaintiff's amended complaint and his opposition to defendant's motion.  Drawing all reasonable

24   inferences from the evidence in plaintiff's favor, the court concludes that plaintiff has not

25   submitted sufficient evidence on summary judgment to create a genuine issue of material fact

26   with respect to his claim that defendant Dr. Traquina violated his rights under the Eighth

27   Amendment.

28   /////

1    As noted above, it is clear that a defendant can be held liable as supervisor "if there exists

2    either (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient

3    causal connection between the supervisor's wrongful conduct and the constitutional violation."

4    Starr, 652 F.3d at 1207.  The Ninth Circuit has also made clear that "a plaintiff must show the

5    supervisor breached a duty to plaintiff which was the proximate cause of the injury."  Id.

6    In this case, plaintiff contends that defendant Dr. Traquina intentionally made sure, either

7    through a policy or practice, that nursing staff was not available to conduct blood pressure checks

8    during modified programming or lockdown periods and on holidays at CSP-Solano.  (Pl.'s SDF

9    in Opp'n to Def.'s Mot. for Summ. J. at 4.)  Plaintiff has not, however, submitted any evidence of

10   an official policy or practice of prohibiting nursing staff from conducting blood pressure checks

11   during these times or occasions.  Although plaintiff declares that the nurses at CSP-Solano would

12   not check his blood pressure during modified programming or lockdown periods and on holidays,

13   his allegations are based on his limited experience alone and do not establish that defendant Dr.

14   Traquina created, implemented, or authorized an actual policy or practice to this effect.  See

15   Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) ("When the non-moving party relies on

16   its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations

17   unsupported by factual data to create an issue of material fact.").

18   Moreover, even if the court assumes for the sake of argument that defendant Dr. Traquina

19   had a policy or practice that prohibited nursing staff from monitoring the blood pressure of

20   inmates during modified program, lockdowns, and on holidays, plaintiff has not submitted any

21   evidence of a causal connection between any such policy or practice on the one hand and a

22   constitutional injury he suffered on the other hand.  See Starr, 652 F.3d at 1207; see also Crowley

23   v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) ("[Plaintiff] failed to raise a genuine issue of

24   material fact  as to causation . . . ." and "failed to raise a genuine issue of material fact that his

25   injury could have been avoided had Dr. Bannister implemented a policy allowing for the

26   administration of three pill calls per day."); OSU Student Alliance v. Ray, 699 F.3d 1053, 1076

27   (9th Cir. 2012) ("Advancing a policy that requires subordinates to commit constitutional

28   violations is always enough for § 1983 liability . . . so long as the policy proximately causes the

1   harm – that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the

2   policy."), cert. denied, ___U.S.___, 134 S. Ct. 70 (2013).

3          As an initial matter, plaintiff testified during his deposition that he could not even recall

4   when he was denied a blood pressure check or how many times such a denial occurred.  When

5   defense counsel pressed plaintiff and asked if he was denied a blood pressure check more than ten

6   or more than twenty times, plaintiff responded, "Between May 10th [2010] and November 2011,

7   may have been seven or eight."  (Pl.'s Dep. at 53)  In his opposition to defendant's pending

8   motion for summary judgment, plaintiff clarifies that he learned through defendant's responses to

9   his discovery requests that prison officials put CSP-Solano on lockdown on the following

10  Mondays and Thursdays when he presumably would have monitored his blood pressure:  May 24,

11  2010, May 27, 2010, June 17, 2010, June 21, 2010, July 12, 2010, August 19, 2010, and March 2,

12  2011.  Plaintiff contends that the following holidays also fell on Mondays and Thursdays:  Labor

13  Day, Veteran's Day, Christmas Eve, New Year's Eve.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J.

14  at 6.)  Plaintiff argues that on these dates he could not monitor his blood pressure and as a result

15  suffered "mini strokes" and that he could have lost his left eye and his life.  In this regard,

16  plaintiff maintains that his blood pressure was never under control while he was at CSP-Solano,

17  and had his blood pressure been checked on the dates that CSP-Solano was on lockdown and on

18  those specified holidays, his doctor could have made a proper determination as to the blood

19  pressure medication he needed to adequately control his hypertension.  (Pl.'s SDF in Opp'n to

20  Def.'s Mot. for Summ. J. at 3.)

21         Plaintiff's contentions, however, are purely speculative.  Plaintiff is not a medical expert

22  and, therefore, he may not offer his own opinion as to whether defendant Dr. Traquina's

23  purported policy caused his alleged injuries.  Certainly by merely expressing his conclusory and

24  speculative opinions plaintiff fails to create a genuine issue of material fact.  See Fed. R. Civ. P.

25  56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on

26  personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

27  or declarant is competent to testify on the matters stated."); Fed. R. Evid. 702 (testimony by

28  expert witnesses).

1    Moreover, plaintiff acknowledged during his own deposition that no medical professional

2  has told him that the lack of blood pressure checks he complains of here caused him any actual

3  harm.  In relevant part, plaintiff testified at deposition as follows:

4           Q.  But you don't recall if they ever connected the mini
             strokes to your hypertension?
5
             A.  No, I can't make that claim.
6
             Q.  Did any medical professional tell you that you had a
7            stroke with regards to your hypertension?

8            A.  Can't make that claim.

9            Q.  Did any medical professional tell you that the lack of
             blood pressure checks caused you any harm?
10
             A.  No.
11

12  (Pl.'s Dep. at 58.)

13    Thus, even assuming that plaintiff did not receive blood pressure checks on the dates he

14  has listed because of the purported policy or practice instituted by defendant Traquina, plaintiff

15  has come forward with no evidence to show that his alleged inability to monitor his blood

16  pressure on those dates was the actual or proximate cause of any injury which he suffered.  See

17  Leer v. Murphy, 844 F.2d 628, 624 (9th Cir. 1988) (a plaintiff must show that defendant's

18  deliberate indifference was the actual and proximate cause of harm suffered).

19    Finally, the court observes that this is not a case where plaintiff repeatedly requested

20  medical care which prison officials denied him.  See McGuckin, 974 F.2d at 1059-60 ("A

21  defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical

22  need in order for deliberate indifference to be established.").  The undisputed evidence in this

23  case shows that plaintiff received regular medical care for his hypertension condition from May

24  2010 through November 2011.  (Pfile Decl., Ex. A.)  In fact, plaintiff's primary care physician

25  during the period in question and who directed him to monitor his blood pressure has submitted a

26  declaration in support of defendant's motion for summary judgment.  Dr. Pfile clearly states that

27  medical personnel regularly monitored plaintiff's hypertension, and that his hypertension was

28  well controlled with medication.  (Pfile. Decl.)  Dr. Pfile also declares that there is no indication

1   in plaintiff's medical records that he suffered any injury at all or experienced any complications

2   due to a lack of blood pressure readings.  (Id.)  Plaintiff has failed to present any competent

3   evidence to rebut this medical opinion or to indicate that the medical treatment he received or did

4   not receive for his hypertension as a result of any purported policy or practice amounted to

5   deliberate indifference to a serious medical need.

6         For all of the foregoing reasons, the court finds that based upon the evidence presented in

7   connection with the pending motion for summary judgment no reasonable juror could conclude

8   that defendant Dr. Traquina was deliberately indifferent to plaintiff's serious medical needs.  See

9   Matsushita, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of

10  fact to find for the nonmoving party, there is no 'genuine issue for trial.'").  Although plaintiff

11  may believe that he needed to have his blood pressure checked by medical staff during modified

12  program and lockdown periods and on holidays and that the failure to conduct such blood

13  pressure checks caused him injury, plaintiff's own opinion and conclusory allegations on this

14  point, unsupported by any evidence, do not create a triable issue of fact.  See Fleming v.

15  Lefevere, 423 F. Supp.2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the

16  appropriate course of care does not create a triable issue of fact because he has not shown that he

17  has any medical training or expertise upon which to base such an opinion.").

18        Accordingly, defendant Dr. Traquina is entitled to summary judgment in his favor with

19  respect to plaintiff's claim that that Traquina was responsible for an institutional policy or

20  practice of failing to provide blood pressure screenings to inmates when the prison was on

21  lockdown status in violation of plaintiff's rights under the Eighth Amendment.

**CONCLUSION**

23  Accordingly, IT IS HEREBY RECOMMENDED that:

24  1. Defendant Dr. Traquina's motion for summary judgment (Doc. No. 41) be granted; and

25  2. This action be closed.

26        These findings and recommendations are submitted to the United States District Judge

27  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

28  after being served with these findings and recommendations, any party may file written

14

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 17, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
reec2949.57

15